IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LSF-KEB Holdings SCA<br>Marnixlaan 23 (5de verdieping)<br>1000 Brussels<br>BELGIUM<br><br>         Petitioner,<br><br> v.<br><br>Republic of Korea,<br><br>         Respondent. | Case No. 1:23-CV-1911 |

### PETITION TO ENFORCE ARBITRAL AWARD

Petitioner LSF-KEB Holdings SCA ("LSF-KEB"), by and through undersigned counsel, submits as follows:

### NATURE OF THE PROCEEDING AND RELIEF SOUGHT

1. LSF-KEB brings this action pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"), which is attached hereto as Exhibit C, to enforce an arbitration award rendered in favor of LSF-KEB in *LSF-KEB Holdings SCA et al. v. Republic of Korea*, ICSID Case No. ARB/12/37.[1] A certified copy of the Tribunal's August 30, 2022 Award, together with the Tribunal's subsequent May 8, 2023 Decision on Rectification that revised the amount of LSF-KEB's damages, is attached as Exhibit A (this will be collectively referred to as

---

[1] Multiple related entities participated alongside LSF-KEB as Claimants before the ICSID Tribunal, specifically LSF SLF Holdings SCA, HL Holdings SCA, Kukdong Holdings I SCA, Kukdong Holdings II SCA, Star Holdings SCA, Lone Star Capital Management SPRL, and Lone Star Capital Investments *S.à.r.l*. Because damages were awarded only to Petitioner LSF-KEB, these other related Claimants are not parties to this action.

1

the "Final Award"). The Final Award imposed pecuniary obligations on the Republic of Korea ("Korea") in the amount of $216,018,682 in favor of LSF-KEB, plus interest on that amount at the average one-month U.S. Treasury rate from December 3, 2011 until the date of full payment, compounded annually. Exhibit A, Decision on Rectification at ¶¶ 23, 48; Exhibit A, Award at ¶ 948(e)(ii).  As of June 26, 2023, LSF-KEB is entitled to $237,602,753.40 in principal and accrued interest.

2. Pursuant to Article 53 of the ICSID Convention, arbitral awards issued under the ICSID Convention are immediately binding on the parties to the arbitration—including, here, Korea.  To date, Korea has not paid any portion of the Award.

3. Enforcement of the Award has not been stayed by the arbitral tribunal (the "Tribunal").

4. Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention are not subject to collateral attack (save for limited proceedings under the ICSID Convention itself).  Such awards must be enforced and given the same full faith and credit as if the award were a final judgment of a court in the United States.

5. Accordingly, LSF-KEB requests that this Court: (1) enter an order recognizing the Final Award and enforcing it in the same manner as a final judgment issued by a court in the United States; (2) enter judgment in LSF-KEB's favor against Korea in the amount set forth in the Final Award, plus interest through the date of full payment, and the costs of this proceeding; and (3) award LSF-KEB such other and further relief as the Court may find just and proper.

## PARTIES

6. Petitioner LSF-KEB is a company organized under the laws of the Kingdom of Belgium ("Belgium").  LSF-KEB is an affiliate of certain private equity funds known collectively as the Lone Star Funds ("Lone Star").

7.        Respondent Korea is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a).

## JURISDICTION AND VENUE

8.        This Court has subject matter jurisdiction over awards rendered under the ICSID Convention. *See* 22 U.S.C. § 1650a(b) (stating that U.S. District Courts have "exclusive jurisdiction over actions and proceedings" for the enforcement of ICSID awards). And the "pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

9.        The United States, Korea, and Belgium are all contracting state parties to the ICSID Convention. Exhibit A, Award at ¶ 29; United States Department of State, *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020*, Section 2 at 53, https://www.state.gov/wp-content/uploads/2020/08/TIF-2020-Full-website-view.pdf.

10.       Furthermore, this Court has subject matter jurisdiction over this action because it is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA. 28 U.S.C. §§ 1330(a), 1605–7. Pursuant to the FSIA, district courts have jurisdiction to enforce ICSID awards against foreign nations under both 28 U.S.C. § 1605(a)(1) and (a)(6). *See Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 275 (D.D.C. 2022); *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-CV-1708-EGS-MAU, 2023 WL 2914472, at *5 (D.D.C. Mar. 31, 2023).

11.       This Court has personal jurisdiction over Korea pursuant to the FSIA. *See* 28 U.S.C. § 1330(b).

12. Venue is proper in this Court pursuant to the FSIA. *See* 28 U.S.C. § 1391(f)(4) (stating that "[a] civil action against a foreign state as defined in section 1603(a) of this title may be brought . . . . in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof").

## THE UNDERLYING DISPUTE

13. In the late 1990s and early 2000s, Lone Star made a series of investments in Korea. Exhibit A, Award at ¶¶ 146–51. The largest of these investments was in 2003, when LSF-KEB acquired a controlling interest in Korea Exchange Bank ("KEB"), one of Korea's largest financial institutions. *Id.* at ¶¶ 150–51. At the time, Korea's economy was still recovering from the Asian financial crisis of 1997–1998 and LSF-KEB's acquisition of KEB was considered a risky investment. *Id.*

14. LSF-KEB was transparent regarding its intention to be a short-term investor in the Korean financial system. When LSF-KEB purchased its KEB shares, it agreed to a two-year "lock up" with the specific intention of reselling its interest thereafter. *Id.* at ¶ 6.

15. After spending several years restoring KEB (and other companies) to financial health, Lone Star sought to exit from its investments. However, around this same time, Korean public opinion had turned against so-called "Eat and Run" foreign investors and Lone Star quickly became a prime target of public fury and political attacks. *Id.* at ¶ 21(a).

16. In 2007, LSF-KEB negotiated a sale of its interest in KEB to Hongkong and Shanghai Banking Corporation Limited ("HSBC"). *Id.* at ¶ 8.

17. To complete any transfer of LSF-KEB's interests in KEB, a would-be purchaser (such as HSBC) needed approval from the Korean Financial Services Commission ("FSC"), which was responsible for authorizing "the establishment, merger, conversion, acquisition and transfer of business" as well as overseeing the management of financial institutions. *Id.* at ¶ 131.

In this role, the FSC acts as a gatekeeper for all significant investors in Korean financial institutions, such as any prospective purchaser of KEB. *Id.* at ¶ 133.

18. However, the FSC was aware it would face significant public backlash if it approved lucrative exit opportunities for short-term foreign investors. *Id.* at ¶¶ 19, 750. So, in an attempt to placate the public and forestall political retaliation, the FSC began to slow-roll the application(s) that would allow LSF-KEB to sell off its investment. *Id.*

19. On September 3, 2007, LSF-KEB entered into a Share Purchase Agreement with HSBC for its controlling interest in KEB. *Id.* at ¶ 216. That same day, the FSC announced its new policy, dubbed the "Wait and See" policy. *Id.* at ¶ 217.

20. Under the "Wait and See" policy, FSC announced that it could not review the HSBC acquisition of KEB due to ongoing lawsuits regarding LSF-KEB's initial acquisition of KEB back in 2003 (the "KEB Acquisition Case") and KEB's rescue of its consumer-finance affiliate, KEB Credit Services shortly thereafter (the "KEB Card case"). *Id.* at ¶¶ 217–18. The FCS indicated that until all "legal uncertainties relating to the trial are resolved" it would be unable to review the potential purchase of KEB. *Id.* at ¶ 217. This position was a departure from previous FSC guidance, which indicated that the ongoing legal proceedings would not impact the sales process. *Id.* at ¶¶ 217–18.

21. In fall 2008, after spending a full year mired in the "Wait and See" period and in the face of the by-then-impending global financial crisis, HSBC eventually withdrew from the Share Purchase Agreement. *Id.* at ¶¶ 219–29. LSF-KEB estimates that the loss of the HSBC deal cost it roughly USD 4 billion. *Id.* at ¶ 8.

22. In late 2010, having steered KEB safely through the financial crisis, LSF-KEB entered into a new agreement with Hana, a Korean bank, to sell its controlling interest in KEB.

Once again, the FSC's "Wait and See" policy significantly delayed the approval process for Hana's application to purchase KEB. *Id.* ¶¶ 233–38.

23. Finally, in October 2011, the Seoul High Court rendered its decision in the KEB Card Case, *id.* at ¶ 239, holding, *inter alia*, that LSF-KEB had violated Korean law and imposed a KRW 25 billion fine. *Id.* As a result of this decision, the FSC ordered LSF-KEB to divest itself of its controlling interest in KEB within 6 months. *Id.* at ¶¶ 241–42.

24. The order failed to acknowledge the fact that *the FSC itself* had been preventing exactly such a sale (to Hana) for nearly a year. *Id.*

25. However, the FSC was still facing intense public scrutiny and political hostility from Korea's National Assembly. *Id.* at ¶¶ 576, 591–94, 613–16. As a result, the FSC continued to withhold its approval of the transaction. *Id.* at ¶¶ 574, 736–41, 780–86.

26. Instead, the FSC pressured LSF-KEB to further reduce the previously-agreed-upon sales price. *Id.* at ¶¶ 736–41. Caught between the FSC's order to divest its shares in KEB within 6 months and the FSC's continuing intransigence, LSF-KEB eventually agreed to a USD 433 million price reduction. *Id.* at ¶ 19.

27. With that reduction in price secured, the FSC approved Hana's application to purchase LSF-KEB's shares in January 2012. *Id.* at ¶ 193.

28. Throughout this period (2005-2012 and beyond), Korea's tax authorities at the National Tax Service levied a series of tax assessments on Lone Star's proceeds from their investments (KEB and others), which were also alleged to be politically motivated and unfounded attacks. *Id.* at ¶ 11.

**THE ARBITRATION**

29. On November 21, 2012, LSF-KEB and various related entities (together the "Claimants") filed a request for arbitration with ICSID (the "Request") pursuant to (i) Article 8

of the Agreement Between the Government of the Republic of Korea and the Belgium-Luxembourg Economic Union for the Reciprocal Promotion and Protection of Investments entered into force on March 27, 2011 (the "2011 BIT"), which is attached hereto as Exhibit B; and (ii) Article 36 of the ICSID Convention, to which the Republic of Korea and the Kingdom of Belgium acceded on March 23, 1967 and September 26, 1970, respectively. Exhibit A, Award at ¶ 29.  The predecessor to the 2011 BIT was the 1976 Agreement Between the Republic of Korea and the Belgo-Luxemburg Economic Union on the Encouragement and Reciprocal Protection of Investments (the "1976 BIT").

30. On December 10, 2012, the Secretary-General of ICSID registered the Request. The Tribunal was originally constituted on May 10, 2013, chaired by Mr. V.V. Veeder, Q.C., a British national, with the Honorable Charles N. Brower, a U.S. national appointed by the Claimants, and Professor Brigitte Stern, a French national appointed by Korea.  After the resignation of Mr. Veeder in March 2020, the Tribunal was constituted in its final form on June 22, 2020. It was chaired by the Honorable Ian Binnie, C.C., Q.C., a Canadian national, together with Judge Brower and Professor Stern. Exhibit A, Award at ¶¶ 45–50.

31. The Tribunal held its first session in June 2013. LSF-KEB and Korea were represented by counsel and fully participated in all of the Tribunal's proceedings from that point forward.

32. The Claimants contended that Korea violated the 2011 BIT as well as its predecessor, the 1976 BIT, and the Convention between the Republic of Korea and the Kingdom of Belgium for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income (the "Korea-Belgium Tax Treaty"). *See* Exhibit A, Award at ¶¶ 1–2.

7

33. The Tribunal rendered its Award on August 30, 2022. Exhibit A, Award. It then issued a Decision on Rectification on May 8, 2023, Exhibit A, Decision on Rectification, in which it corrected various clerical and arithmetic errors in the original decision.

34. As an initial matter, the Tribunal concluded that it did not have jurisdiction over any claims that predated the 2011 BIT, which included the estimated $4 billion injury associated with Lone Star's loss of the HSBC deal in 2008. Exhibit A, Award at ¶¶ 17–18. However, the Tribunal concluded that the FSC's actions after the entry into force of the 2011 BIT, including the FSC's 2011 price reduction tactics, were within its jurisdiction. *Id.*

35. The Tribunal ruled that Korea violated Article 2(2) of the 2011 BIT, which provides that "[Lone Star's] investments in Korea 'shall at all times be accorded fair and equitable treatment.'" Exhibit A, Award at ¶¶ 713, 779–91.

36. The Tribunal concluded that the FSC put "its own self-interest (in surviving the political storm surrounding Lone Star) ahead of its statutory mandate to consider fairly and expeditiously Hana's application to acquire LSF-KEB's controlling interest in KEB." Exhibit A, Award at ¶ 19. The Tribunal further concluded that "public and Parliamentary wrath dictated the FSC's decision-making, and the FSC succumbed to the pressure by orchestrating a significant reduction in the purchase price of KEB by Hana." *Id.* at ¶ 750.

37. The Tribunal awarded LSF-KEB 50% of the $433 million price reduction that resulted from the FSC's unlawful interference in LSF-KEB's sale of KEB to Hana. *Id.* at ¶¶ 23–24.

## THE AWARD

38. In the Award as modified by the Decision on Rectification, which addressed certain clerical and arithmetic errors, LSF-KEB was awarded $216,018,682 in damages. Exhibit A, Decision on Rectification at ¶ 60.  The Tribunal granted interest on this award "from 3

December 2011 until the date of payment, compounded annually at the average one-month U.S. Treasury rate." Exhibit A, Award at ¶ 25. Under Article 53 of the ICSID Convention, the Final Award was immediately binding on Korea. To date, Korea has made no payments on these damages.

## LEGAL FRAMEWORK FOR RELIEF

39. The United States is a contracting state party to the ICSID Convention. United States Department of State, *Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020*, Section 2 at 53, https://www.state.gov/wp-content/uploads/2020/08/TIF-2020-Full-website-view.pdf. Article 54 of the ICSID Convention provides that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Exhibit C, ICSID Convention at Art. 54.

40. Under U.S. law, "[t]he pecuniary obligations imposed by [an award issued pursuant to the ICSID Convention] shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

41. Korea may not bring any substantive claims challenging the Tribunal's Final Award before this Court. In enforcing ICSID awards, a court is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction." *Cube Infrastructure Fund SICAV v. Kingdom of Spain*, No. 20-CV-1708-EGS-MAU, 2023 WL 2914472, at *11 (D.D.C. Mar. 31, 2023) (citations omitted). Instead, the court's role is limited to ensuring "that it has subject-matter and personal jurisdiction; that the award is

authentic; and that its enforcement order tracks the award." *Id.* (citing *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022)).[2]

42. As outlined above, under the terms of the Final Award, LSF-KEB is entitled to principal damages in the amount of $216,018,682.

43. LSF-KEB is also entitled to interest on that amount "from 3 December 2011 until the date of payment, compounded annually at the average one-month U.S. Treasury rate." Exhibit A, Award at ¶ 25.

44. As of June 26, 2023, the awarded damages, plus interest, total $237,602,753.40.

**COUNT 1: FOR RECOGNITION AND ENFORCEMENT OF ARBITRATION AWARD PURSUANT TO 22 U.S.C. § 1650a**

45. LSF-KEB re-alleges and incorporates by reference preceding paragraphs 1 through 44 as if set forth fully herein.

46. A binding arbitration award under the ICSID Convention has been issued in LSF-KEB's favor.

47. Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory recognition and enforcement in the courts of the United States. 22 U.S.C. § 1650a(a).

48. Korea has not paid any portion of the Final Award.

---

[2] The only avenue for parties to contest an ICSID award is to bring an ancillary proceeding within the ICSID Convention system itself for either a "revision" or an "annulment." *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. CV 16-1533, 2019 WL 2185040, at *1 (D.D.C. May 21, 2019). Korea has indicated that it may file an annulment challenging various aspects of the Tribunal's Final Award. Likewise, Lone Star is evaluating potential annulment grounds. However, any potential annulment proceedings would have limited scope and enforcement of the Final Award before this Court would remain proper. *Id.* (noting that an enforcement action may be provisionally stayed in the event annulment proceedings are filed with ICSID but that the tribunal's award remains binding on the parties). LSF-KEB will promptly inform the court if any annulment proceedings are filed with ICSID and will advise the Court of any impact on the current proceeding.

49. Accordingly, LSF-KEB is entitled to an order enforcing the Final Award as a judgment pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a and entering judgment thereon in the amount of $216,018,682, plus interest accruing from December 3, 2011 until the date of final payment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner LSF-KEB respectfully requests an order:

A. Confirming the Final Award pursuant to 28 U.S.C. § 1650a and Article 54 of the ICSID Convention.

B. Entering judgment in favor of Petitioner LSF-KEB and against Respondent in accordance with the Final Award, for $216,018,682, plus interest on that amount at the average one-month U.S. Treasury rate from December 3, 2011, compounded annually, until the date of final payment.

C. Awarding attorneys' fees and costs associated with this proceeding; and

D. Granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Date:  June 30, 2023 | By: *Mark P. Guerrera*<br>Mark P. Guerrera<br>DC Bar No. 450311<br>Jacquelyn E. Fradette<br>DC Bar No. 1034328<br>Cayla C. Calderwood<br>DC Bar No. 1741442<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 736-8580<br>Facsimile: (202) 736-8711<br>mguerrera@sidley.com<br>jfradette@sidley.com<br>ccalderwood@sidley.com<br><br>*Attorneys for Petitioner* |